In The
Court of Appeals
For The
First District of Texas
____________
NO. 01-01-00948-CV
____________

IN RE DANIEL S. CARTWRIGHT, Relator 




Original Proceeding on Petition for Writ of Mandamus




OPINION ON REHEARING
           The opinion issued on April 4, 2002 is withdrawn, and this opinion is issued in its
place. 
           Relator, Daniel S. Cartwright, filed a petition for writ of mandamus challenging the
trial court’s order appointing an arbitrator other than the one named in the parties’ agreement
to arbitrate and, in the alternative, challenging the trial court’s order appointing an arbitrator
who had previously acted as a mediator in the same parties’ dispute regarding possession of
their child. We deny writ on the first issue and grant writ on the second. 
BACKGROUND
           Daniel Cartwright and Gwyn Cartwright were divorced in December 1997. In an
agreement incident to divorce (AID), they included the following provision for mediation and
arbitration: 
Any claim or controversy arising out of the Final Decree of Divorce,
Cartwright Operating Agreement, or the Agreement Incident to Divorce that
cannot be resolved by direct negotiation will be mediated as provided in
chapter 154 of the Texas Civil Practices and Remedies Code with JAMES
PATRICK SMITH. If the parties cannot resolve the matter through mediation,
then JAMES PATRICK SMITH shall be the arbitrator to arbitrate all disputes. 

           In October 1999, Gwyn filed a lawsuit in the 165th Civil District Court against Daniel
and others, asserting property claims. In January 2001, Daniel filed a suit affecting the
parent-child relationship (SAPCR) under the original cause number 96-47718 in the 245th
District Court, seeking to modify his possession of and access to the parties’ child. The
165th District Court concluded that Gwyn’s property claims against Daniel were for breach
of the AID and transferred that portion of the case to the 245th District Court, where the case
was given the number 96-47718-B (the B-case). 
           Daniel filed a motion to compel arbitration in the B-case in accordance with the AID. 
At a hearing on March 13, 2001, Gwen agreed to participate in a mediation of the property
issues, but objected to arbitration on the basis that the agreement was not for binding
arbitration and, therefore, arbitration would be a waste of time.


 Gwyn also objected to
Smith as the arbitrator. On March 22, 2001, the trial court signed an order compelling
mediation/arbitration. The court ordered the parties to mediate and, if necessary, to arbitrate
all contractual and property issues with Smith “no later than May 15, 2001.” The order
compelling mediation/arbitration bore the cause number 1996-47718. 
           On April 17, in a letter to Smith, Daniel’s counsel indicated that the mediation was
rescheduled to May 3 and the arbitration to May 4.


 On April 18, Gwyn’s counsel wrote
Smith, saying that counsel agreed to mediate on May 3, but that he considered May 4 too
soon to arbitrate the case due to some outstanding discovery. He also informed Smith that
Daniel’s counsel opposed the motion to extend the time of the arbitration. On April 19,
Daniel’s counsel wrote Smith to say, “I believe we should go forward with the arbitration on
May 4th as scheduled.” On April 23, Daniel’s counsel wrote Smith, defending his client’s
compliance with discovery matters and again stating that he thought the mediation and
arbitration should proceed as previously scheduled. On April 26, in a hearing before Smith,
Gwyn’s counsel indicated that he had filed a motion asking the trial court to extend the
arbitration deadline, but that the court had not given him a hearing on the motion. 
           On May 2, Daniel’s counsel wrote Smith, saying there was confusion regarding the
dates for mediation and arbitration, that Gwyn’s counsel had complained about the May 4
arbitration, and that Daniel’s counsel had learned that Gwyn’s counsel had issued a subpoena
for the appearance at the arbitration hearing of a witness whom Daniel’s counsel had been
trying to depose. Daniel’s counsel proposed taking the witness’s deposition and said that the
arbitration could be conducted “as soon as reasonably possible” following the deposition. 
In the letter, Daniel’s counsel said that he had spoken with Gwyn’s counsel that same
morning to reschedule the mediation “closer to the arbitration” and that Gwyn’s counsel said
that he intended to go forward with the arbitration as scheduled. 
           On May 3, Gwyn’s counsel appeared at Smith’s office with Gwyn and a court reporter
and made a certificate of non-appearance in which he stated that he and Gwyn had shown up
in good faith to mediate; that neither Daniel, his counsel, nor Smith had appeared; that the
mediation had apparently been cancelled; and that Gwyn’s counsel had received no notice
of the cancellation. Gwyn’s counsel attached, as exhibits, the correspondence from the
attorneys to Smith, the order compelling mediation, an unsigned notice of mediation, and one
page of the transcript of the April 26 hearing. 
           Meanwhile, a notice of intent to dismiss had been sent by the district clerk to counsel
for both parties on March 22. On April 20, the B-case was dismissed for want of
prosecution. 
           In a telephone conference on August 22, the trial court instructed the parties to
complete arbitration by September 7. On August 23, the trial court issued an order ordering
mediation on September 4 and arbitration to be completed by September 7, with the
arbitrator’s rulings delivered to the court by September 10. The order also set the case for
trial beginning October 25, 2001. On August 31, Daniel filed a motion for continuance that
stated that Daniel’s lead counsel was scheduled for trial in another case on September 4. The
continuance was granted. 
           On September 26, the date on which mediation was to begin, Smith conducted a
hearing on the record. At this hearing, Smith learned, apparently for the first time, that the
B-case had been dismissed in April for want of prosecution. Daniel’s counsel argued that,
because of the dismissal, there were no property claims before the court. Gwyn’s counsel
stated that he had only recently learned of the dismissal from Daniel’s counsel. Various
accusations of unprofessional behavior were exchanged between counsel. Smith concluded
that, in light of the dismissal of the property suit—the B-case—there was doubt about his
jurisdiction to proceed with the arbitration, as well as doubt about the validity of any orders
he had issued in the previous months. As a result, the mediation did not go forward. Neither
counsel informed Smith that, on September 18, Gwyn had filed an amended petition
containing Gwyn’s claims in both the SAPCR and property suit.
           On October 11, the trial court held a hearing at which the parties each presented their
own attempts to proceed with the arbitration and their opponent’s resistance to the
arbitration. The trial court was informed that Smith would not be available to arbitrate the
issues before the trial setting. The trial court then indicated that, if Smith was not available,
the court would appoint another arbitrator. On that same date, the trial court issued an order
for the parties to arbitrate their claims before the Honorable Mary Sean O’Reilly beginning
on October 20 and continuing October 21 and 22 until conclusion. Daniel objected that the
trial court could not appoint any arbitrator other that one named in the AID and that, if the
court could name another arbitrator, it could not be Judge O’Reilly because she had mediated
the parties’ dispute over possession of their child in the SAPCR and, as a mediator, she had
had access to privileged information. 
           On October 17, 2001, Gwyn filed a response to Daniel’s objection and requested,
under section 171.041(b) of the Texas Arbitration Act (TAA),


 that the trial court appoint
Judge O’Reilly as arbitrator of the property issues. Gwyn attached a copy of Judge
O’Reilly’s vitae. 
           At a hearing on October 18 to consider Daniel’s objections, the trial court stated that
another arbitrator had been appointed because of the delays in arbitrating with Smith and
because Smith was at that time out of the country and would not be available to arbitrate the
property issues before October 25, the date set for trial and the ultimate arbitration deadline
set by the court. The court reminded the parties that they had agreed to each of the dates set
for arbitration, and the court said that both sides were guilty of dragging out the arbitration
process. Regarding the objection to Judge O’Reilly, the court said, 
The arbitrator mediated the child custody issues, nothing dealing with
property. As far as the Court is concerned, as far as this Court knows, unless
there is some proof otherwise, no property issues have been before this
mediator. So this Court’s order to mediate with that arbitrator on those dates
will stand. 

Following this ruling, Daniel filed this petition for writ of mandamus and an interlocutory
appeal.



DISCUSSION
           Mandamus issues only to correct a clear abuse of discretion or the violation of a duty
imposed by law when there is no other adequate remedy at law. Johnson v. Fourth Court of
Appeals, 700 S.W.2d 916, 917 (Tex. 1985). A trial court abuses its discretion only when its
decision is so arbitrary and unreasonable that the decision amounts to a clear and prejudicial
error of law. Cent. Nat’l Ins. Co. of Omaha v. Lerner, 856 S.W.2d 492, 494 (Tex.
App.—Houston [1st Dist.] 1993, orig. proceeding). 
Appointment of Arbitrator Other Than Smith
           In his first issue, Daniel contends that the trial court abused its discretion in appointing
an arbitrator other than Smith, the individual expressly agreed to in the AID. Daniel argues
that the TAA applies to this case and, therefore, the trial court may not appoint a different
arbitrator unless the appointment complies with section 171.041(b) of the TAA. See Tex.
Civ. Prac. & Rem. Code Ann. § 171.041 (Vernon Supp. 2003). Daniel complains that no
party made the required application stating the nature of the issues to be arbitrated and the
qualifications of the proposed arbitrator and, in addition, the named arbitrator was not unable
to act. Daniel also contends that it was improper for the trial court to impose a timetable for
the arbitration. 
           On the other hand, Gwyn contends that the Alternative Dispute Resolution Act (the
ADR Act)


 applies to this case. The ADR Act provides for nonbinding arbitration. See Tex.
Civ. Prac. & Rem. Code Ann. § 154.027 (Vernon 1997). Gwyn also argues that she
complied with section 171.041(b) of the TAA in her request that Judge O’Reilly be appointed
as arbitrator.
           The TAA applies to an arbitration if the arbitration is binding. The TAA, by its own
terms, cannot apply to nonbinding arbitration. See, e.g., Tex. Civ. Prac. & Rem. Code Ann.
§§ 171.053-.054, 171.081, 171.087-.092 (Vernon Supp. 2003) (pertaining to the arbitration
award and its modification or correction, vacation, confirmation, and enforcement). The
TAA necessarily contemplates that the arbitration award be binding, and it makes no
provision for a nonbinding arbitration procedure. Porter & Clements, L.L.P. v. Stone, 935
S.W.2d 217, 221 (Tex. App.—Houston [1st Dist.] 1996, no writ). Therefore, to determine
whether the trial court abused its discretion in appointing a different arbitrator, we must first
determine whether the parties agreed to binding or nonbinding arbitration. 
           Chapter 154 applies to court-ordered referrals to alternative methods of dispute
resolution, not to private, contractual agreements to resolve disputes. See Tex. Civ. Prac.
& Rem. Code Ann. § 154.021 (Vernon 1997); Porter & Clements, 935 S.W.2d at 220. 
When a court orders arbitration of a pending dispute under chapter 154, the arbitration is
nonbinding unless the parties stipulate in advance that it will be binding. Tex. Civ. Prac.
& Rem. Code Ann. § 154.027 (Vernon 1997). 
           The provision in the AID for mediation invoked chapter 154 of the Texas Civil
Practices and Remedies Code. See Tex. Civ. Prac. & Rem. Code Ann. §§ 154.001-.073
(Vernon 1997 & Supp. 2003). However, chapter 154 is not mentioned in the AID with
reference to arbitration. Furthermore, the trial court’s order to arbitrate was not initiated by
the court; it was an order enforcing the parties’ agreement to arbitrate. Private, contractual
arbitration is governed by the TAA, which provides, 
A written agreement to arbitrate is valid and enforceable if the
agreement is to arbitrate a controversy that: 
 
(1)exists at the time of the agreement; or 
(2)arises between the parties after the date of the agreement. 

Tex. Civ. Prac. & Rem. Code Ann. § 171.001(a) (Vernon Supp. 2003). The arbitration
agreement in this case was a written agreement to arbitrate a controversy that arose between
the parties after the date of the agreement. In addition, the language of the agreement
strongly implies that the arbitration is intended to resolve the controversy (“If the parties
cannot resolve the matter through mediation, then [Smith] shall be the arbitrator to arbitrate
all disputes.”). A nonbinding arbitration does not, of itself, resolve a dispute. See Tex. Civ.
Prac. & Rem. Code Ann. § 154.027 (Vernon 1997) (a nonbinding arbitration “serves only
as a basis for the parties’ further settlement negotiations”). We hold that the parties, in the
AID, agreed to binding arbitration. We further hold that the TAA applies to the arbitration
in this case. 
           We next consider whether the trial court’s appointment of a different arbitrator
complied with section 171.041(b). Section 171.041(b) provides:
The court, on application of a party stating the nature of the issues to be
arbitrated and the qualifications of the proposed arbitrators, shall appoint one
or more qualified arbitrators if: 
. . . 
(2)the agreed method fails or cannot be followed; or
(3)an appointed arbitrator fails or is unable to act and a successor
has not been appointed. 

Tex. Civ. Prac. & Rem. Code Ann. § 171.041(b) (Vernon Supp. 2003). 
           The trial court’s first arbitration order was signed on March 13, 2001. That order
provided that the arbitration was to be held no later than May 15, 2001. The arbitration was
scheduled and reset several times. On August 23, 2001, the trial court signed another order 
providing that the arbitration was to take place on September 4, 2001 and setting the trial date
for October 25, 2001. The parties did not arbitrate on September 4, 2001. At a hearing on
October 11, the trial court was informed that Smith would not be available to arbitrate the
issues before the trial setting. The trial court then signed an order appointing Judge O’Reilly
as arbitrator, and Daniel objected. On October 17, 2001, Gwyn filed a response to Daniel’s
objection and requested, under section 171.041(b), that the trial court appoint Judge O’Reilly
as arbitrator of the property issues. Gwyn attached a copy of Judge O’Reilly’s vitae. 
           The proceedings on October 11 clearly established the parties’ efforts to delay the
arbitration and to frustrate the court’s and the arbitrator’s efforts to resolve the property
issues. Under these circumstances, the trial court could have reasonably believed that the
agreed method of arbitration had failed. See id. § 171.041(b)(2).
           The record before us does not establish whether one of the parties requested that Judge
O’Reilly be appointed as arbitrator or the court, sua sponte, made the appointment. However,
upon Daniel’s objection, Gwyn filed a response in support of the trial court’s appointment
of Judge O’Reilly. This response stated that there was no dispute regarding the scope of the
“property issues” to be referred to the arbitrator. Furthermore, the record of the October 11
hearing established that the trial court knew the nature of the issues to be arbitrated. Gwyn
attached Judge O’Reilly’s vitae, which showed Judge O’Reilly’s qualifications to act as
arbitrator in the case. We hold that Gwyn’s response substantially complied with section
171.041(b). See id. § 171.041(b) (Vernon Supp. 2003). 
           In light of our determination that the trial court could have reasonably believed that
the parties’ agreed method of arbitration had failed and our holding that Gwyn substantially
complied with section 171.041(b), we further hold that the trial court did not abuse its
discretion in appointing an arbitrator other than the one named in the arbitration agreement. 
The Court-Ordered Arbitration Timetable
           Daniel also complains that the trial court improperly imposed a timetable for the
arbitration. Daniel directs us to section 171.044, which provides, “Unless otherwise provided
by the agreement to arbitrate, the arbitrators shall set a time and place for the hearing and
notify each party.” Tex. Civ. Prac. & Rem. Code Ann. §171.044(a) (Vernon Supp. 2003). 
Daniel argues that subsection (c), which states that the court “may direct the arbitrators to
proceed promptly with the hearing and determination of the controversy,” did not give the
court the authority to require the arbitration to proceed beginning October 20 with Judge
O’Reilly, rather than on October 24 with Smith. Daniel characterizes the suggested October
24 date as “comparatively prompt.” 
           A trial court has the inherent authority to control the disposition of cases on its docket. 
Dow Chem. Co. v. Francis, 46 S.W.3d 237, 240 (Tex. 2001). Here, the parties had been
engaging in delaying tactics since April. The trial court was not required to postpone
disposition of this case indefinitely while the parties argued about setting the arbitration. We
hold that the trial court did not abuse its discretion in setting a reasonable deadline and
requiring the parties to complete arbitration before the date of their trial setting. 
           We overrule Daniel’s first issue. 
The Appointment of Judge O’Reilly as Arbitrator
           In his second issue, Daniel contends that the trial court abused its discretion in
appointing Judge O’Reilly as arbitrator after she had served as the parties’ mediator in the
SAPCR. Daniel argues that Judge O’Reilly is disqualified to act as an impartial arbitrator
because of privileged information to which she was privy in her role as mediator. 
           Gwyn counters that (1) Daniel’s complaint is too general and the trial court has not
seen or ruled on the supposed confidential information; (2) as a former judge, Judge O’Reilly
is capable of disregarding any information that is confidential; and (3) Judge O’Reilly’s
service as both mediator and arbitrator is no different from the proposed service of Smith in
both capacities. 
           We find no statute or case law directly applicable to the confidentiality of contractual
mediations. However, we conclude that the provisions for confidentiality set out in chapter
154 of the Texas Civil Practice and Remedies Code, which applies to court-ordered
mediations, are guidelines to be followed in private, contractual mediations. 
           Section 154.073(a) provides that all communications made to a mediator are
confidential, are not subject to disclosure, and may not be used as evidence against the
participant in any judicial or administrative proceeding. Tex. Civ. Prac. & Rem. Code Ann.
§ 154.073(a) (Vernon Supp. 2003). In addition, all matters concerning a mediation are
confidential and may not be disclosed even to the appointing court. Tex. Civ. Prac. &
Rem. Code Ann. § 154.053(c) (Vernon Supp. 2003). Thus, a mediator is in the position of
receiving the parties’ confidential information, which may not be revealed to the court or to
any other person. If the mediator is later appointed to be the arbitrator between the same
parties, he or she is likely to be in the possession of information that either or both of those
parties would not have chosen to reveal to an arbitrator. 
           Requiring Daniel to present prejudicial, confidential information to the trial court in
chambers for a ruling on his objection to Judge O’Reilly, as Gwyn proposes, would defeat
the purpose of section 154.053. The mediation process encourages candid disclosures,
including disclosures of confidential information, to a mediator. It is the potential for the use
of that confidential information that creates the problem when the mediator, over the
objection of one of the parties, becomes the arbitrator of the same or a related dispute.


 Just
as it would be improper for a mediator to disclose any confidential information to another
arbitrator of the parties’ dispute, it is also improper for the mediator to act as the arbitrator
in the same or a related dispute without the express consent of the parties.
           We know of no basis for assuming that judges “routinely see confidential, prejudicial
information during pre-trial proceedings,” as asserted by Gwyn, but, if the parties reveal such
information to the trial court, they do so at their peril and with the knowledge that the judge
will be deciding the merits of their dispute. That argument cannot justify appointing, over
a party’s objection, a mediator to function as an arbitrator in the same or a related dispute. 
           Finally, Gwyn’s argument that Judge O’Reilly’s service in both capacities is no
different from Smith’s service in both is without merit. The parties selected Smith to serve
as mediator and, if the issues were not resolved, to serve as arbitrator. Therefore, the parties
would have known, when they disclosed confidential information to Smith during the
mediation, that the information could be used by him in making his award as arbitrator. The
parties then could have made informed decisions about what to disclose to the mediator. 
Because they did not know, when Judge O’Reilly mediated the SAPCR, that she would also
later be their arbitrator, the parties had no opportunity to make such an informed decision
about their disclosures during the mediation. 
           For these reasons, we hold that the trial court, in appointing Judge O’Reilly, the
parties’ mediator, to serve as arbitrator, abused its discretion. 
           We sustain Daniel’s second issue. 
CONCLUSION
           We deny the petition for writ of mandamus as it relates to the appointment of an
arbitrator other that James Patrick Smith. However, in light of the parties’ agreement to
mediate, and, if necessary, to arbitrate their property dispute with James Patrick Smith, our
ruling is not to be understood as a basis for appointing a substitute mediator/arbitrator unless
James Patrick Smith is unable to act as the parties’ mediator/arbitrator prior to any new trial
setting.
           We conditionally grant the petition for writ of mandamus only as it relates to the
appointment of the Honorable Mary Sean O’Reilly as arbitrator of the parties’ property and
contractual disputes. We direct the trial court to vacate its October 11, 2001 order appointing
the her as arbitrator. We are confident that the trial court will promptly comply with our
opinion. The writ will issue only if the court does not do so. 
 
                                                                             Sam Nuchia
                                                                             Justice

Panel consists of Justices Nuchia, Jennings, and Wilson.